1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10          **WESTERN DIVISION**

11    **CHRISTOPHER E. FARLEY,**               )
                                               )
12                   **Plaintiff,**            )      **Case  No. CV 06-00039 AJW**
                                               )
13             **v.**                          )      **MEMORANDUM OF DECISION**
                                               )
14    **MICHAEL J. ASTRUE,**                   )
      **Commissioner of the Social**           )
15    **Security Administration[1],**          )
                                               )
16                   **Defendant.**            )
      _____ )

17

18          Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the

19    Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance

20    benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to the

21    disputed issue(s).

22                              **Administrative Proceedings**

23          Plaintiff filed a disability insurance benefits application on February 6, 2003 alleging disability since

24    July 15, 2002 due to pain, stiffness, and swelling in his right leg and ankle stemming from a right ankle

25    fracture in 1983, hypothyroidism, and fatigue.  [JS 2; Administrative Record ("AR") 69-72, 80, 97-103, 110,

26

27          [1]    Michael J. Astrue is substituted for his predecessor Jo Anne B. Barnhart.  Fed. R. Civ. P.
28    25(d)(1).

1   115]. His application was denied through the administrative hearing level. [JS 2]. Following an

2   administrative hearing, Administrative Law Judge James D. Goodman (the "ALJ") found that plaintiff had

3   severe impairments consisting of status post fracture of the right tibia and fibula with residuals of pain,

4   coldness, numbness, and decreased pulses; hypothyroidism; obesity; gastro-esophageal reflux disease

5   ("GERD"); and fatigue secondary to hypothyroidism. [AR 18]. The ALJ determined that plaintiff retained

6   the residual functional capacity ("RFC") to perform sedentary work with no more than 10 minutes of

7   standing or walking at one time, no more than occasional kneeling and crawling, no climbing, no working

8   at dangerous heights, and no walking on uneven terrain. [AR 16, 18]. The ALJ further found that plaintiff's

9   RFC precluded him from performing his past relevant work as a telephone service technician, but that

10  plaintiff could perform alternative work available in significant numbers in the national economy. [AR 17,

11  19]. Accordingly, the ALJ concluded that plaintiff was not disabled. [AR 19]. The Appeals Council denied

12  plaintiff's request for review. [AR 4-6].

13      The parties have stipulated that the ALJ's decision fairly and accurately summarizes the material

14  medical evidence.[2] [JS 2-3]. Therefore, the ALJ's summary of the evidence will be cited where applicable.

15                              **Standard of Review**

16      The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

17  evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002,

18  1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more

19  than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971);

20  Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might

21  accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co.

22  of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to

23  review the record as a whole, and to consider evidence detracting from the decision as well as evidence

24  supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53

25  F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational

26  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas,

27  ─────────────────

28      [2]   Plaintiff does not stipulate that the evidence, either as summarized or in the record as a
        whole, supports the ALJ's decision.

278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Plaintiff's subjective complaints**

Plaintiff contends that the ALJ erred in rejecting the alleged severity of his subjective complaints. [JS 4-9].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of a claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

As the ALJ correctly observed, plaintiff's "chief complaint" concerned the residual effects of a fracture of his right ankle suffered in 1983, when he was struck by a car while riding a motorcycle. [AR 16, 203, 236]. Asked by the ALJ what prevented him from returning to work, plaintiff answered, "The pain in my ankle." [AR 431]. When the ALJ asked if there were any other physical or mental problems that prevented him from working, plaintiff responded, "Tiredness, fatigue." [AR 431]. Plaintiff attributed his fatigue to his thyroid condition and difficulty adjusting his thyroid medication. [AR 432-438]. He also noted that he recently had been diagnosed with hepatitis "C," and that condition was being "tested and watched" to determine "if they're going to try any kind of intervention [or] treatment." [AR 438-439].

The ALJ accepted plaintiff's subjective complaints to the extent that he limited plaintiff to sedentary

work with standing and walking for no more than 10 minutes at a time, but the ALJ permissibly concluded that the objective medical evidence did not corroborate plaintiff's allegations of disabling symptoms. A right tibia and fibula x-ray showed soft tissue swelling and old healed fractures but otherwise was normal. [AR 16, 165]. Bilateral lower extremity arterial and venous ultrasound studies performed on March 24, 2003 were normal. [AR 14, 369-370]. An April 2004 Doppler arterial flow study revealed no significant evidence of peripheral vascular disease. [AR 15, 188]. A November 2004 venous ultrasound of plaintiff's right lower extremity showed no deep vein thrombosis. That study revealed evidence of valvular insufficiency in the saphenous vein in the right foot, but there was no diagnosis of vascular disease. [AR 15, 218]. Plaintiff's treating physicians at West Covina Medical Center detected coldness, cyanosis (purplish discoloration) and absent or reduced pulses in plaintiff's right foot. [AR 15, 218]. Dr. Wong, a treating physician, completed a form indicating that plaintiff could perform what amounts to a restricted range of light work. [AR 16]. Similar findings were noted by the Commissioner's consultative internist, Dr. Siciarz-Lambert, during her July 2003 examination, but she concluded that plaintiff nonetheless could perform medium work. [AR 14-15]. Two non-examining state agency physicians gave plaintiff a more restrictive assessment than Dr. Siciarz-Lambert, but they nonetheless concluded that plaintiff could perform light work. [AR 15]. The ALJ rationally concluded that the objective evidence did not correspond to the disabling level of symptom severity that plaintiff alleged. See Bunnell, 947 F.2d at 345 (stating that the absence of medical findings to support the degree of severity alleged is one factor the ALJ may consider in evaluating the credibility of the testimony and complaints). Plaintiff's thyroid was removed in September 2000 and he was placed on Synthroid. [AR 15]. That procedure (and most of the treatment reports in the record) predates plaintiff's alleged onset date in July 2002. [See AR 246-399]. The ALJ observed that during the relevant period (that is, from mid-2002 until early 2005), plaintiff was followed at intervals of three to four months for his thyroid condition, right lower extremity complaints, GERD, hyperlipidimia, and, eventually, hepatitis, with somewhat more frequent visits for transient complaints, such as a right neck lipoma (lump) that eventually was excised without complications. [AR 14-15; see AR 215-245]. Although plaintiff occasionally reported complaints of unusual fatigue or pain, his visits often were routine, with mild subjective complaints noted or none at all. [See, e.g., AR 219, 222 ("some right ankle pain with the cold whether [sic]" and "new onset of right knee pain" on November 3, 2004); AR 220-221 (no subjective complaints noted on November 18,

2004); AR 223, 227, 231-233 (right neck lump detected, followed, and excised on July 2, 2004; June 8, 2004; April 21, 2004; and January 16, 2004); AR 224-225, 228-230 (no subjective complaints noted on June 22, 2004; April 9, 2004; and March 18, 2004 ); AR 234 (plaintiff "states he is very tired, his only complaint" on November 24, 2003); AR 236 (plaintiff presented for treatment and follow-up of thyroid level and gave history of 1983 motorcycle accident, but "[o]therwise . . . is without complaints" on October 16, 2003)]. Plaintiff was prescribed medication for his thyroid condition, GERD, high cholesterol, and high blood pressure, but he did not take prescription pain relievers. [AR 113, 435-436].

The ALJ permissibly concluded that plaintiff's relatively conservative, routine treatment history for management of his hypothyroidism and other chronic conditions was not consistent with his allegations of disabling pain and other symptoms. See Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001)(holding that the ALJ properly rejected the claimant's testimony because he did not use narcotic pain relievers "commonly prescribed for severe and unremitting pain"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ properly relied on conservative treatment history to discount the claimant's subjective complaints).   In addition, the ALJ noted that the opinions of the treating and examining physicians provide further support for his credibility assessment. [AR 15-16].   See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)(stating that the ALJ may consider information from physicians regarding the nature and effect of a claimant's symptoms).

The ALJ also mentioned plaintiff's testimony that he is able to perform some household chores, take care of his personal needs, watch television, and read.  While not highly probative of plaintiff's ability to work, that evidence, considered along with the objective findings and plaintiff's treatment history, in the context of the record as whole, supported the ALJ's finding that plaintiff's symptoms limited him to sedentary work but were not disabling.

**Plaintiff's wife's testimony**

Plaintiff's contends that the ALJ did not properly evaluate the testimony of plaintiff's wife, Pamela Farley.[JS 14-16].

The ALJ summarized Ms. Farley's testimony in his decision. [AR 16].  He gave "little weight" to her "somewhat biased" testimony because of her "close family relationship" with plaintiff and her "pecuniary interest" in the outcome of the case, and because her testimony was "colored by her own

opinion." [AR 16].

The ALJ must provide "germane reasons" for discrediting the testimony of a lay witness. Bayliss v. Barnhart, 427 F.3d 1211, 1218  (9th Cir. 2005).  The first two reasons the ALJ gave are not germane reasons for rejecting Ms. Farley's testimony because "family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to h[is] condition." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The third reason is valid, in that some of Ms. Farley's testimony reflected a greater level of limitation than plaintiff described in his own testimony.  Plaintiff responded affirmatively when asked by the ALJ whether he could perform "routine chores, such as mopping, dusting, sweeping and the like[.]" [AR 436] Asked how he entertained himself, plaintiff replied, "I read.  I study. I watch TV." [AR 444].  Ms. Farley, however, testified that plaintiff did not do household activities, and she said that the only activity he did on a daily basis was driving to pick up their son from school at three p.m. [AR 451-453]. Plaintiff testified that he felt "vaguely" fatigued during the day and that fatigue "hits me really hard around 1:00 or 2:00 in the afternoon" [AR 443], but he did not testify that he took frequent daily naps, as his wife testified.  [AR 443, 451].  Ms. Farley testified that plaintiff could not walk for long, citing as an example a recent shopping trip to Home Depot and another store, when plaintiff complained of pain after walking for about half an hour. [AR 451]. That testimony was consistent with plaintiff's testimony that he could walk about half an hour on a good day before having to take the weight off of his ankle. [AR 441-443].  Plaintiff also said, however, that he was comfortable sitting in a chair. [AR 444].  The ALJ factored those aspects of plaintiff's testimony into his finding that plaintiff was limited to sedentary work with no more than 10 minutes of walking or standing at a time. [AR 16].  Accordingly, the ALJ provided germane reasons for discounting Ms. Farley's testimony.

**Development of the record**

Plaintiff contends that the ALJ was under a duty to recontact plaintiff's treating sources or otherwise develop the record further regarding plaintiff's diagnoses of hepatitis C and sleep apnea. [JS 18-19].

The ALJ wrote that "[t]he record shows that the claimant has been diagnosed with Hepatitis C and possible sleep apnea. However, there is no objective evidence to support these diagnoses.  Therefore, they are not medically determinable." [AR 13].

The claimant bears the burden of proving disability. An ALJ is required to recontact a doctor only if the record is ambiguous or insufficient for the ALJ to make a disability determination. See 20 C.F.R. §§ 404.1512(a), 416.912(a); Bayliss, 427 F.3d at 1217; Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001). Plaintiff's treatment reports included a diagnosis of hepatitis C first made in 2004, with no indication that the condition produced specific symptoms or functional limitations. See Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed emotional disorder "is not per se disabling," and that "there must be proof of the impairment's disabling severity"). In March 2004, plaintiff tested positive for hepatitis C antibody but had an "undetectable viral load." [AR 228, 230]. Plaintiff questioned whether the hepatitis C result was a false positive, and his doctor agreed to order a repeat antibody study, which apparently had not been conducted as of November 18, 2004, the date of the most recent treatment report in the record. [AR 219-220, 228].

Plaintiff did not have a diagnosis of sleep apnea. In October 2000, after his thyroidectomy but long before his alleged onset date, plaintiff complained of "feeling like a zombie," daytime sleepiness, low energy, and weight gain. [AR 258]. His treating doctor discussed possible sleep apnea, but there does not appear to have been any testing or follow-up specific to that condition, nor was a diagnosis of sleep apnea made. Plaintiff's thyroid medication was adjusted and he reported some improvement, and he also was advised to diet, exercise, and lose weight. [AR 256-259]. In January 2002, plaintiff reported having lost 18 pounds and said "that he is doing very well." [AR 250]. In November 2002, however, plaintiff was reported to have gained 20 pounds since his last visit. He was counseled about diet, exercise, and weight loss. [AR 245-246]. A February 24, 2003, progress report includes a notation of "[f]atigue, probably secondary to hypothyroidism. Cannot rule out sleep apnea." [AR 242]. The treating doctor adjusted plaintiff's Synthroid dosage and advised plaintiff to lose weight. [AR 242]. In May 2003 plaintiff was still complaining of fatigue, along with coughing and shortness of breath. The impression was "[m]ost likely acute bronchitis, cannot rule out pneumonitis," hypothyroidism, and hyperlipidimia. [AR 238]. Sleep apnea was not mentioned. Plaintiff was prescribed an antibiotic. There does not appear to have been any follow-up for sleep apnea nor any specific treatment (other than adjustment of his thyroid medication) for plaintiff's complaints of fatigue, and his complaints of being very tired did not persist. [See AR 228-234]. During the hearing, plaintiff testified that he had "tested positive several times for hepatitis" and that he had been

7

referred to a gastrointestinal specialist, who had not prescribed any treatment but simply was watching plaintiff's condition to determine "what treatment, if any" he should receive.  [AR 438].

The record was not ambiguous or insufficient for the ALJ to determine that plaintiff's diagnosis of hepatitis C and an isolated reference to possible sleep apnea were not medically-determinable impairments and certainly were not severe.  See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (stating that a claimant "must show more than the mere presence of a condition or ailment" to demonstrate the existence of a severe, medically-determinable impairment) (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). Plaintiff has not come forward with any additional evidence that the ALJ overlooked nor has he suggested how recontacting the treating source might have clarified or amplified the record in any useful way. Therefore, plaintiff's argument is without merit.[3]

**Plaintiff's obesity**

Plaintiff argues that although the ALJ found obesity to be a medically-determinable impairment, that finding "immediately dropped off the radar screen never to be heard about again in the decision." [JS 21]. This, plaintiff argues, violates the Commissioner's policy guidelines directing the ALJ to consider the effect of obesity on other impairments.[4] [JS 21-22].

The ALJ has a duty to determine the effect of a disability claimant's "obesity upon her other

---

[3]     The ALJ granted plaintiff a continuance of the hearing once to allow additional evidence to be obtained.  The ALJ initially convened the administrative hearing on October 19, 2004. [AR 412]. Plaintiff was represented by counsel during that hearing. The ALJ noted that counsel had brought to his attention the problem of some missing medical evidence and commented that the record "appears to be somewhat scant as far as it's [sic] development is concerned."  [AR 412-413].  The ALJ discussed with plaintiff's counsel, Mr. Potter, the problem of the missing evidence from Dr. Wong and Kaiser Permanente. [AR 412, 414-416].  The ALJ offered to issue subpoenas to ensure that the evidence was obtained. [AR 415-416]. The ALJ also made a point of advising plaintiff in detail about his "burden of proof and the burden going forward with the evidence."  [AR 413-414]. Plaintiff's counsel requested a continuance of the hearing for the additional reason that the attorney who had agreed to represent plaintiff, Ms. Cohen (a member of Mr. Potter's firm), had advised the ALJ that she was unavailable on October 19 but would be available at a later date. [AR 38, 416]. The ALJ granted the request for a continuance, and the hearing was reconvened on January 5, 2005 with Ms. Cohen representing plaintiff. [AR 416].  She advised the ALJ that she was ready to proceed. [AR 421].

[4]     Plaintiff's medical reports state that he is 5 feet, 10 inches tall and that his weight fluctuated between  195 pounds and 230 pounds during the relevant period. [See AR 221-247].

impairments, and its effect on her ability to work and general health," even where the claimant's obesity was not independently "severe" and was not explicitly alleged to be a "disabling factor." Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003)(reversing and remanding the Commissioner's decision that the claimant could perform light work for a "multiple impairment analysis that explicitly accounts for the direct and marginal effects of the plaintiff's obesity during the period in question and that culminates in reviewable, on-the-record findings"); see SSR 02-1p, 2000 WL 628049, at *3, *5 (stating that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "may increase the severity of coexisting or related impairments," and explaining that when evidence of obesity is found in the record, adjudicators must consider and explain whether obesity, alone or interacting with other impairments, causes any physical or mental limitations).

Plaintiff is wrong in asserting that the ALJ "ignore[d] the issue of obesity." [JS 22]. After finding that obesity was a medically-determinable impairment, the ALJ inquired further into its effects. He wrote:

> I also specifically considered [whether] the claimant's obesity might, by itself, be equivalent in severity to a listed condition, I also thought about whether it could elevate the other impairments to listing-level significance. There is no evidence that either of these alternatives applies, as noted above. The opinions of the [Department of Disability Services] physician and the treating sources support this conclusion. Consequently, I see no basis under Social Security Rule 02-01p to find that this condition equals a listing or aggravates other impairments to listing-level severity.

[AR 14].

The ALJ's conclusion is supported by substantial evidence in the record. Plaintiff's treating doctor advised him to lose weight, but beyond that, there are no treating source statements ascribing particular impairments or limitations to plaintiff's weight. Insofar as obesity contributed to plaintiff's subjective symptoms, the ALJ adequately considered that factor when he assessed the alleged severity of plaintiff's subjective complaints and limited plaintiff to sedentary work. Unlike the plaintiff in Celaya, plaintiff was represented by counsel during the initial and continued hearings. Plaintiff and his attorney had ample opportunity to obtain evidence before the continued hearing, including the opportunity to request the issuance of subpoenas by the ALJ. See note 3, supra. While the ALJ "could have asked counsel to develop

the issue" of obesity, as plaintiff suggests, nothing in the record or in the hearing transcript shows that there was a need to do so.  Moreover, counsel could and should have developed that issue if she believed there was any basis for doing so. In sum, the ALJ did not fail to consider plaintiff's obesity, and he discharged his obligation to consider its effect on plaintiff's ability to work.

**Vocational expert testimony**

Plaintiff argues that the ALJ's hypothetical questions, posed in interrogatories to the vocational expert [AR 130-144], were "incomplete because they made no mention of pain nor fatigue,"and therefore the ALJ erred in relying on the testimony of the vocational expert, Mr. Gordon. [JS 24-25].

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities . . . ." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett, 180 F.3d at 1101; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).  A vocational expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the medical evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

The ALJ's hypothetical questions assumed the RFC he eventually adopted in his written decision. [AR 134]. For the reasons described above, the limitations posited by the ALJ in his RFC finding were supported by substantial evidence and were free of legal error.  The vocational expert testified that a hypothetical person with plaintiff's background and the RFC identified by the ALJ would have skills that are transferable to other sedentary skilled or semi-skilled occupations with little vocational adjustment. [AR 130-144].  The ALJ relied on that testimony to find that plaintiff could perform the Dictionary of Occupational Titles ("DOT") jobs of (1) semiconductor assembler, a sedentary, semiskilled job, (2) trouble locator, test desk, a sedentary, skilled job, and (3) hearing-aid repairer, a sedentary, skilled job. [AR 17-19, 143].

Plaintiff objected to the vocational expert's interrogatory responses and submitted a declaration controverting the vocational expert's testimony regarding the skills he acquired during his 22 years a telephone frame technician and service technician. [AR 151].  Plaintiff contended that he had not acquired

1   the skills identified by the vocational expert and therefore could not perform the jobs on which the ALJ

2   based his finding of non-disability. The ALJ admitted plaintiff's declaration in part, but he concluded that

3   it did not undermine the reliability of the vocational expert's testimony.  This is where the ALJ went awry.

4        The Commissioner has concluded that being of "advanced age" (aged 55 and above) "significantly

5   affects a person's ability to adjust to other work." 20 C.F.R. § 404.1563(d). Therefore, a person of advanced

6   age who cannot perform his or her past relevant work, such as plaintiff, must be found disabled unless that

7   person is capable of performing alternative work that is either skilled or semi-skilled (not unskilled) *and*

8   "less demanding" than his past relevant work.  See 20 C.F.R. §§ 404.1563(d), 416.963(d); 20 C.F.R. Part

9   404, Subpart P, Appendix 2, §§ 201.00(c)-(f), 202.00(c)-(f); see also Terry v. Sullivan, 903 F.2d 1272,

10  1275-1276 (9th Cir. 1990)("[I]t is not enough that persons of advanced age are capable of doing unskilled

11  work; to be not disabled, they must have acquired skills from their past work that are transferable to skilled

12  or semiskilled work.") (citing 20 C.F.R. § 404, Subpart P, App. 2, Rules 201.04-201.08; 20 C.F.R. §

13  404.1568(d)).  If a person of advanced age does not have skills that are transferable to alternative skilled

14  or semi-skilled jobs, that person is considered unskilled and must be found disabled.  See 20 C.F.R. §

15  404.1565(a) (1996); see also Social Security Ruling (SSR) 83-10[5]; accord, Terry v. Sullivan, 903 F.2d 1273,

16  1277 nn.7 & 8 (9th Cir. 1990).

17       In general, an ALJ can find a claimant's acquired skills are transferable to other jobs "when the

18  skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements

19  of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1);

20  Vertigan v. Halter, 260 F.3d 1044, 1052 (9th Cir. 2001).

21       Where, as here, a claimant of advanced age is restricted to sedentary work, the "functional adversity"

22  of advanced age is greater than for a claimant of the same age who can perform light work.  See generally

23  20 C.F.R. §§ 404.1568(d), 416.968(d); SSR 82-41, 1982 WL 31389, *2 ("Reduced residual functional

24  capacity (RFC) and advancing age are important factors associated with transferability because reduced

---

[5]SSR 83-10 states: "The ability to perform skilled or semi-skilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semi-skilled work."

RFC limits the number of jobs within an individual's physical or mental capacity to perform, and advancing age decreases the possibility of making a successful vocational adjustment."). In recognition of the vocational adversity of advanced age combined with a sedentary work restriction, the regulations provide that a claimant of advanced age who is limited to sedentary work must be found disabled unless his or her skills can be transferred with "very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." See 20 C.F.R. § 404, Subpart P, App. 2, § 201.00(f).

In finding that plaintiff had skills that could be transferred with "little vocational adjustment," the vocational expert relied on the DOT definitions of plaintiff's past work and the three alternative jobs he identified. [AR 143].  The vocational expert found that plaintiff possesses

> transferable skills in fabricating, installing, and repairing objects that have electrical and electronic functioning elements by any combination of the following: Abrading, Bolting-Screwing, Boring, Fitting-Folding, Nailing, Riveting, Soldering-Brazing, Welding, and Winding.

[AR 143].

In the non-excluded portions of his declaration submitted in opposition to the vocational expert's interrogatory responses, plaintiff stated under penalty of perjury that

> I was employed by Pacific Bell for 22 years as a frame technician and a service technician. My work did not involve extensive repair of electronic equipment. . . . Thus, I did not learn or use the skills of abrading, fitting/folding, riveting, welding, brazing, or winding.  I performed soldering very occasionally.  . . . We were limited to the inside wiring and cables used for transmission of telephone service up to a posted demarcation point. . . .  I have had no experience or specialized knowledge of semi-conductors or hearing aids.

[AR 151-152].

A finding of transferability "depends largely on the similarity of occupationally significant work activities among different jobs." Vertigan, 260 F.3d at 1052 (quoting 20 C.F.R. § 404.1568(d)(1) and SSR 82-41, 1982 WL 31389, at *2). Transferability is "most probable and meaningful among jobs in which--(I) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved." 20 C.F.R. §

1   404.1568(d)(2).  The similarity between work activities must be even greater where, as here, there must be

2   "very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the

3   industry."  See 20 C.F.R. § 404, Subpart P, App. 2, § 201.00(f).

4        Plaintiff's uncontroverted declaration establishes that plaintiff did not have most of the skills the

5   vocational expert relied on to find that plaintiff had skills that were transferable with little vocational

6   adjustment to the three jobs the vocational expert identified.  The vocational expert did not review plaintiff's

7   declaration.  He was not present at the hearing, and he was not given access to the hearing tape or transcript.

8   Therefore,  he did not have the opportunity to hear any of plaintiff's hearing testimony or ask plaintiff any

9   questions which might have informed his expert opinion. [See AR 144[6]].  In addition, plaintiff's counsel

10  did not have the opportunity to cross-examine the vocational expert on the critical issues of transferability

11  and vocational adjustment.  The ALJ denied plaintiff's counsel's request that the vocational expert be

12  required to review the hearing tape before responding to the interrogatories.  He also denied her request for

13  a supplemental hearing to allow plaintiff to develop the record regarding his past work experience.  [AR 66-

14  68, 128, 146-148].  Even though the Federal Rules of Evidence do not apply in social security disability

15  hearings, the ALJ also struck portions of plaintiff's declaration concerning his past relevant work experience

16  because he concluded they lacked proper foundation, contained legal conclusions, or were conclusory.

17        In light of plaintiff's declaration testimony and these procedural constraints, the vocational expert's

18  testimony does not constitute substantial evidence supporting the ALJ's findings that plaintiff has skills

19  transferable with little vocational adjustment to the DOT jobs of semi-conductor assembler, trouble locator-

20  test desk, and hearing aid repairer. [AR 18].  The Commissioner therefore did not meet his burden to

21  identify alternative jobs that plaintiff can perform.

22  **Remand or award benefits**

23        The choice whether to reverse and remand for further administrative proceedings, or to reverse and

24  simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th

25  Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of

26

27        [6]    In response to interrogatory number 22, the vocational expert stated, "I have not heard the
    Claimant's testimony.  Therefore, I cannot comment on how his testimony might change my opinion
28  . . . ." [AR 144; see AR 134-135].

1   benefits is discretionary and is subject to review for abuse of discretion), <u>cert. denied</u>, 531 U.S.  1038

2   (2000).  The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand

3   to the agency for additional investigation or explanation." <u>Moisa</u>, 367 F.3d at 886 (quoting <u>INS v. Ventura</u>,

4   537 U.S. 12, 16 (2002) (per curiam)).   A district court, however,

5       should credit evidence that was rejected during the administrative process and remand for

6       an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for

7       rejecting the evidence; (2) there are no outstanding issues that must be resolved before a

8       determination of disability can be made; and (3) it is clear from the record that the ALJ

9       would be required to find the claimant disabled were such evidence credited.

10   <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004) (citing <u>Harman</u>, 211 F.3d at 1178). The <u>Harman</u> test

11   "does not obscure the more general rule that the decision whether to remand for further proceedings turns

12   upon the likely utility of such proceedings."  <u>Harman</u>, 211 F.3d at 1179; <u>see</u> <u>Benecke</u>, 379 F.3d at 593

13   (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record

14   would be useful").

15       A remand for further proceedings is appropriate in this case for the purpose of requiring the ALJ to

16   conduct a supplemental hearing to elicit testimony from plaintiff and a vocational expert regarding

17   plaintiff's transferable skills and the alternative jobs plaintiff can perform in light of the RFC assigned by

18   the ALJ and the requirements of transferability and vocational adjustment.

19                           **Conclusion**

20       For the reasons stated above, the Commissioner's decision is not supported by substantial evidence

21   and does not reflect application of the proper legal standards.  Accordingly, the Commissioner's decision

22   is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings

23   consistent with this memorandum of decision.

24   **IT IS SO ORDERED.**

25   DATED: February 26, 2007          / s /

                                     _____

26                                       ANDREW J. WISTRICH

                                    United States Magistrate Judge

27

28